**SHUB LAW FIRM LLC**
Jonathan Shub (State Bar No. 237708)
*jshub@shublawyers.com*
Kevin Laukaitis (Pro Hac Vice to file)
*klaukaitis@shublawyers.com*
134 Kings Highway E Fl 2
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile:  (856) 210-9088

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (Pro Hac Vice to file)
spencer@spencersheehan.com
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
Telephone:  (516) 268-7080
Facsimile:   (516) 234-7800

*Counsel for Plaintiff and the Proposed Class*
[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ETHEL DARNELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ORGAIN MANAGEMENT, INC.,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Ethel Darnell ("Plaintiff"), on behalf of herself and others similarly situated brings this Class Action Complaint against Orgain Management, Inc. ("Defendant"), and on the basis of personal knowledge, information and belief, and investigation of counsel, allege as follows:

1

## INTRODUCTION

1.      Defendant manufactures distributes, markets, labels and sells Unsweetened Vanilla Almondmilk under the Orgain brand ("Product").

2.      During the Class Period (as defined below), Plaintiff purchased Orgain Unsweetened Vanilla Almondmilk in California.

3.      Defendant falsely and misleadingly markets Orgain Unsweetened Vanilla Almondmilk to consumers as having its characterizing, or main flavor, from vanilla beans.




4.      The back of the Product states "Our Commitment to Clean Nutrition."

Class Action Complaint

5.      Unfortunately for consumers, the Product's taste comes from artificial flavors instead of vanilla beans, such that the taste is dissimilar to what consumers expect from products labeled as "vanilla."

6.      The Product is available to consumers from retail and online stores of third-parties and is sold in cartons of various sizes including 32 ounces.

7.      Defendant charges a price premium for the Product.

8.      Plaintiff seeks damages and an injunction to stop Defendant's false and misleading marketing practices with regards to the Product.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

10.      The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

11.      Plaintiff seeks to represent a class of citizens of California and Oregon.

12.      Defendant is a Defendant is a California corporation with a principal place of business in Irvine, California.

13.      Diversity is established because under CAFA, members of the proposed class are citizens of Oregon, while Defendant is not a citizen of California. 28 USC 1332(d)(2)(A).

14.      CAFA defines class members as "the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 USC 1332(d)(1)(D).

15.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiff's claims occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself

of the laws and markets of this District through the promotion, marketing, distribution and sale of its products here, (2) resides in this District, and (3) is subject to personal jurisdiction in this District.

**PARTIES**

16.     Plaintiff Ethel Darnell is a resident of the City of Oakland and County of Alameda, California.

17.     During the Class Period (as defined below), in California, she purchased the Product for personal, family, or household use on occasions between April and July 2020.

18.     Plaintiff purchased the Product at locations including Costco, 1900 Davis St, San Leandro, CA 94577.

19.     Plaintiff would not have purchased or paid more for Product had she realized that much, if not all, of the vanilla flavor came from non-vanilla plant sources.

20.     The front of the Product said "Vanilla."

21.     The back of the Product said "Our Commitment to Clean Nutrition."

22.     Plaintiff relied upon these representations when she purchased the Product.

23.     She believed that the vanilla flavor in the Product was exclusively and/or predominantly from vanilla beans in addition to vanilla plant sources.

24.     Plaintiff would not have purchased the Product had Plaintiff understood the true flavor composition of the Product.

25.     Plaintiff would purchase the Product again in the future if the Product were remedied to reflect Defendant's labeling and marketing claims for it.

26.     Defendant is a California corporation with a principal place of business in Irvine, California.

**INTRADISTRICT ASSIGNMENT**

27.     Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to

4

the claims herein arose in Alameda County, California and this action should be assigned to the Oakland Division.

## **BACKGROUND**

28.     Vanilla (*Vanilla planifolia Andrews* and *Vanilla tahitenis Moore*) comes from an orchid plant that originated in Mexico where it was first cultivated.

29.     The fruit pod of the vanilla flower is the vanilla bean, the raw material for vanilla flavorings.

30.     The vanilla bean is heated in the sun and its flavor constituents extracted (vanilla extract).

31.     Vanilla's unique and complex flavor is due to its many odor-active compounds including acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls.

Class Action Complaint

| MS Scan # | Area Integration | Peak Assignment | Peak Area % |
|---|---|---|---|
| 67 | 16132 | hexanal | 0.0206 |
| 71 | 16235 | butanediol isomer | 0.0207 |
| 81 | 57370 | butanediol isomer | 0.0732 |
| 103 | 36387 | 3-methylbutyric acid | 0.0464 |
| 115 | 33053 | furfural | 0.0422 |
| 141 | 27408 | butanal, diethyl acetal | 0.0350 |
| 262 | 18390 | 3-methylbutanal, diethyl acetal | 0.0235 |
| 281 | 25224 | hexanoic acid | 0.0322 |
| 289 | 2729 | methyl furfural | 0.0035 |
| 299 | 52183 | phenol + trace of benzaldehyde | 0.0665 |
| 349 | 2385 | 1H-pyrrole-2-carboxaldehyde | 0.0030 |
| 379 | 47287 | limonene + benzyl alcohol | 0.0603 |
| 397 | 13835 | heptanoic acid | 0.0176 |
| 409 | 31102 | gamma-hexalactone | 0.0397 |
| 415 | 19338 | p-cresol | 0.0247 |
| 425 | 4470 | hexanal, diethyl acetal | 0.0057 |
| 443 | 287479 | guaiacol | 0.3666 |
| 453 | 5947 | nonanal | 0.0076 |
| 477 | 10000 | phenylethyl alcohol | 0.0128 |
| 496 | 112067 | ? | 0.1429 |
| 505 | 44668 | benzoic acid + octanoic acid | 0.0570 |
| 522 | 4551 | diethyl succinate | 0.0058 |
| 536 | 2461 | ethyl benzoate | 0.0031 |
| 544 | 11769 | 1,2-benzenediol | 0.0150 |
| 555 | 145356 | 2-methoxy-4-methylphenol | 0.1854 |
| 567 | 2537 | methyl salicylate | 0.0032 |
| 587 | 8552 | hydroxy methyl furfural (HMF) | 0.0109 |
| 594 | 5555 | benzeneacetic acid | 0.0071 |
| 605 | 101562 | nonanoic acid | 0.1295 |
| 624 | 6802 | hydroquinone | 0.0087 |
| 631 | 3864 | 4-methoxybenzaldehyde (p-anisaldehyde) | 0.0049 |
| 642 | 6356 | ethyl nonanoate | 0.0081 |
| 653 | 53264 | 4-methoxybenzyl alcohol (p-anisyl alcohol) | 0.0679 |
| 676 | 14481 | cinnamyl alcohol | 0.0185 |
| 685 | 16094 | 3-hydroxybenzyl alcohol | 0.0205 |
| 718 | 12188570 | 3-hydroxybenzaldehyde + 4-ethoxymethylphenol | 15.5440 |
| 751 | 122634 | methyl cinnamte | 0.1564 |
| 759 | 60715743 | vanillin | 77.4301 |
| 796 | 90669 | methyl-p-methoxybenzoate (methyl paraben) | 0.1156 |
| 809 | 2228588 | vanillyl ethyl ether + trace of 4-hydroxy-3-methoxybenzyl alcohol | 2.8421 |
| 832 | 224829 | p-hydroxybenzoic acid | 0.2867 |
| 839 | 37335 | acetovanillone | 0.0476 |
| 892 | 950342 | vanillic acid | 1.2120 |
| 909 | 405589 | 3,4-dihydroxybenzaldehyde | 0.5172 |
| 935 | 82429 | 3,4-dihydroxy-5-methoxybenzaldehyde | 0.1051 |
| 954 | 6212 | ethyl homovanillate | 0.0079 |
| 975 | 78148 | syringealdehyde | 0.0997 |
| 1266 | 14130 | ethyl palmitate | 0.0180 |
| 1518 | 21477 | ethyl linoleate | 0.0274 |
| | 78413588 | Total | 100.0000 |

32.     While vanillin plays a significant role, it contributes less than one-third of the overall flavor/aroma impact of vanilla.

33.     Methyl cinnamate and cinnamyl alcohol provide distinct cinnamon and creamy notes to vanilla.

34.     P-cresol contributes flavor notes described as woody and spicy.

35.     Acetovanillone provides a sweet, honey note.

36.     P-hydroxybenzoic acid and vanillic acid are significant phenolic compounds which

6

contribute to vanilla's aroma.

37. 4-methoxybenzaldehyde (p-anisaldehyde) provides creamy flavor notes to vanilla.

38. 4-methoxybenzyl alcohol (p-anisyl alcohol) provides floral notes.

39. The popularity of vanilla in the 19th century led to the isolation of the most predominant flavor component, vanillin.

40. However, vanillin separated from the other compounds cannot produce the flavor and taste consumers know as vanilla.

41. Sensory evaluation of vanillin is mainly sweet, with a chemical-like taste.

42. The availability of low-cost vanillin resulted in foods purporting to contain vanilla, which either contained no vanilla or a trace or de minimis amount, boosted by synthetic vanillin.

43. Consumers, industry and government have long sought to prevent the deceptive practice where consumers are sold a food labeled as "vanilla" only to discover too late it lacks the richness and layered taste only provided by vanilla beans.

## SPECIFIC MISREPRESENTATIONS AND DECEPTIVE ACTS

44. California has enacted regulations identical to those of the FDA for labeling foods, which prohibit misbranding. 21 U.S.C. § 343(a).

45. These regulations require a food's front label to disclose the source of its characterizing, or main, flavor, and whether it is natural or artificial.

46. Artificial flavors are defined by the FDA as any flavoring from a synthetic source or made through an artificial process. 21 C.F.R. § 101.22(a)(1).

47. Where a food contains any artificial flavor that simulates the characterizing flavor, the front label is required to disclose this fact through the statement, "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

48. Natural flavors are flavors from natural sources made through natural processes. 21

C.F.R. § 101.22(a)(3).

49.    These natural processes include roasting, heating, enzymolysis and fermentation.

50.    There are two types of natural flavors: (1) "from the named fruit" ("FTNF"), like strawberry flavor from strawberries and (2) "other natural flavors" – sources other than the named fruit which provide the *flavor* of the named fruit.

51.    If all of a food's characterizing flavor is from its characterizing ingredient, the front label is only required to state the name of the ingredient, i.e., vanilla or strawberry. 21 C.F.R. § 101.22(i)(1).

52.    Surveys have consistently found that at least seven out of ten consumers avoid artificial flavors.[1]

53.    "All demographics [of consumers] from Generation Z to Baby Boomers – say they would pay more" for foods with no artificial flavors."[2]

54.    Reasons for eschewing artificial flavors include a desire to avoid synthetic ingredients and unnatural, harsh processing of ingredients.

55.    Consumer demand for "natural foods that are free of artificial ingredients" has resulted in increased demand for real vanilla.[3]

56.    In 2018, in response to a surge in fraudulently labeled vanilla flavored foods, the flavor industry trade group, The Flavor and Extract Manufacturers Association of the United States ("FEMA"), urged companies to return to truthfully labeling vanilla foods so consumers would not

---

[1] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.
[2] Nancy Gagliardi, *Consumers Want Healthy Foods – And Will Pay More For Them*, Forbes, https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-    healthy-foods-and-will-pay-more-for-them/#37ec75ca75c5 (last visited September 28, 2020)

[3] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?

8

Class Action Complaint

be misled by artificial vanilla flavors.[4]

57.     Based on the front label statement of "Vanilla" without qualifying terms – i.e., naturally flavored, artificially flavored, other natural flavors – and back label statement of "Clean Nutrition," consumers and Plaintiff expected the Product to be flavored only or predominantly from vanilla beans, not contain artificial flavors and have a vanilla taste.



58.     The ingredient list identifies the flavoring as "ORGANIC NATURAL FLAVORS"

---

Class Action Complaint

1 and "NATURAL FLAVOR."

2
3
4
5
6
7
8
9

INGREDIENTS: ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS), ORGANIC PEA PROTEIN, ORGANIC NATURAL FLAVORS, CONTAINS 1% OR LESS OF THE FOLLOWING: TRICALCIUM PHOSPHATE, ORGANIC RICE BRAN EXTRACT, TRIPOTASSIUM CITRATE, GELLAN GUM, SEA SALT, ORGANIC LOCUST BEAN GUM, NATURAL FLAVOR, ERGOCALCIFEROL (VITAMIN D2)

10
11
12
13

**INGREDIENTS:** ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS), ORGANIC PEA PROTEIN, ORGANIC NATURAL FLAVORS, CONTAINS 1% OR LESS OF THE FOLLOWING: TRICALCIUM PHOSPHATE, ORGANIC RICE BRAN EXTRACT, TRIPOTASSIUM CITRATE, GELLAN GUM, SEA SALT, ORGANIC LOCUST BEAN GUM, NATURAL FLAVOR, ERGOCALCIFEROL (VITAMIN D2)

14

15   59.   Based on laboratory analysis, the Product contains an abnormal excess of vanillin.

16   60.   Further, the analysis did not reveal detectable levels of methyl cinnamate, cinnamyl

17 alcohol, p-cresol, acetovanillone, p-hydroxybenzoic acid, 4-methoxybenzaldehyde (p-

18 anisaldehyde), 4-methoxybenzyl alcohol (p-anisyl alcohol) and vanillic acid, even though these

19 compounds were analyzed for.

20
21
22
23
24
25
26
27
28

10

| Integration | Peak Assignment | PPM w/w |
|---|---|---|
| 175287 | formic acid | 0.0762 |
| 132501 | acetic acid | 0.0576 |
| 7927 | diacetyl | 0.0034 |
| 49804 | 1-butanol | 0.0217 |
| 61783 | acetol | 0.0269 |
| 95868 | acetoin | 0.0417 |
| 65338 | 1,2-propylene glycol | 0.0284 |
| 94987 | isopentyl alcohol | 0.0413 |
| 650898 | hexanal | 0.2830 |
| 206123 | 1,3-butanediol | 0.0896 |
| 21743 | 3-methylbutyric acid + methyl pyrazine | 0.0095 |
| 7141 | furfural | 0.0031 |
| 5533 | furfuryl alcohol | 0.0024 |
| 370231 | lactic acid | 0.1610 |
| 128415 | pentanoic acid | 0.0558 |
| 99568 | 2-heptanone | 0.0433 |
| 12183 | heptanal | 0.0053 |
| 22075 | 2,5-dimethylpyrazine | 0.0096 |
| 268303 | hexanoic acid | 0.1166 |
| 521071 | benzaldehyde | 0.2265 |
| 28160 | 6-methyl-5-hepten-2-one | 0.0122 |
| 149732 | 2-pentylfuran | 0.0651 |
| 25862 | octanal | 0.0112 |
| 94232 | trimethylpyrazine | 0.0410 |
| 26125 | 2,4-heptadienal + 1H-pyrrole-2-carboxaldehyde | 0.0114 |
| 5314928 | cyclotene | 2.3107 |
| 175828 | benzyl alcohol | 0.0764 |
| 502382 | heptanoic acid | 0.2184 |
| 39915 | 2-nonanone | 0.0174 |
| 384158 | guaiacol | 0.1670 |
| 70844 | nonanal | 0.0308 |
| 18603326 | maltol | 8.0879 |
| 19860386 | octanoic acid + benzoic acid | 8.6344 |
| 238681 | gamma-heptalactone | 0.1038 |
| 30717 | decanal | 0.0134 |
| 2300149 | naphthalene-d8 (internal standard) | 1.0000 |
| 674335 | nonanoic acid | 0.2932 |
| 32041 | 2,4-decadienal | 0.0139 |
| 141637 | 2,4-decadienal | 0.0616 |
| 108778 | butyl, butyrolactate | 0.0473 |
| 308702 | decanoic acid | 0.1342 |
| 123102 | piperonal | 0.0535 |
| 42375 | gamma-nonalactone | 0.0184 |
| 328979953 | vanillin | 143.0255 |
| 192024 | 4-hydroxy-3-methoxybenzonitrile | 0.0835 |
| 246175 | gamma-decalactone | 0.1070 |
| 109052 | 4-hydroxy-3-methoxyacetophenone | 0.0474 |
| 84470 | lauric acid | 0.0367 |
| 58677 | vanillyl methyl ketone | 0.0255 |
| 677224 | triethyl citrate | 0.2944 |
| 91326 | 4-hydroxy-3,5-dimethoxybenzaldehyde (syringaldehyde) | 0.0397 |
| 316266 | myristic acid | 0.1375 |
| 2270125 | palmitic acid | 0.9869 |
| 313900 | ethyl palmitate | 0.1365 |
| 114848 | ethyl linoleate | 0.0499 |
| 824211 | ethyl oleate | 0.3583 |

61.     This means the "organic natural flavors" and "natural flavor" contain at most *de minimis* vanilla and lacks the key odor-active compounds in authentic vanilla which provide a vanilla taste.

62.     The analysis reveals that the Product contains undisclosed artificial flavors – vanillin, maltol and piperonal. 21 C.F.R. § 172.515(b), § 182.60 ("Synthetic flavoring substances and adjuvants.").

63.     Vanillin is the primary flavor compound in vanilla.

64.     "Vanillin may be produced through processes recognized as yielding an artificial flavor consistent with the FDA definition of 'artificial flavor' such as the production of vanillin from lignin. Vanillin may also be produced through processes that yield a natural flavor consistent with the FDA definition of 'natural flavor.'" *See* Hallagan and Drake at p. 48.

65.     The naturally produced vanillin begins with eugenol, and through natural enzymatic reactions, is converted to vanillin.

66.     However, Defendant does not use this version of vanillin because the process is exceedingly slow and non-economical.

67.     The artificially produced vanillin also begins with eugenol but involves multiple chemical reactions.

68.     The first step is the isomerization of eugenol to isoeugenol under alkaline conditions.

69.     This leads to conversion into coniferal alcohol, then to ferulic acid.

70.     The second step involves oxidizing the ferulic acid, which is broken down into vanillin, under high pressure, high heat and alkaline conditions.

71.     High pressure and high heat are not considered "natural" processes for the purposes of producing a "natural flavor," which means this vanillin is required to be designated as an artificial flavor. 21 C.F.R. § 101.22(a)(1).

72.     Assuming Defendant uses vanillin produced through the artificial process described, the Product is falsely labeled because it does not disclose "artificial flavor" on the front label and ingredient list, as required by law. 21 C.F.R. § 101.22(i)(2) (requiring front label statement of "artificially flavored" where a food contains any artificial flavor which simulates the characterizing flavor).

73.     When used in foods labeled as "vanilla," vanillin is considered an artificial flavor

because the only "natural vanillin" is from vanilla beans.

74.     Even if Defendant uses vanillin produced through the natural process described, the Product is falsely labeled for the same reasons.

75.     FDA has issued regulatory correspondence in recent years on the proper labeling of vanillin that is produced consistently with processes described in the definition of "natural flavor."

76.     Regarding vanillin produced using a natural process, FDA stated that the common or usual name for this material is "vanillin" and could be labeled as "vanillin derived naturally through fermentation."

77.     According to legal counsel for FEMA, John Hallagan and Joanna Drake, the labeling of a "food not subject to a standard of identity," like Defendant's almond milk, that has a characterizing flavor of vanilla, must disclose vanillin from non-vanilla sources, even if it is produced via a natural process. *See* Hallagan and Drake, The Flavor and Extract Manufacturers Association of the United States, "Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," Perfumer & Flavorist, Vol. 43 at 48, Apr. 25, 2018.

78.     The FDA has stated that it is misleading to identify vanillin as a natural flavor in a food labeled as "vanilla," because this implies it is a natural vanilla flavor.

79.     Moreover, "if the [vanillin] flavoring ingredient is being used in another food as 'vanilla flavoring' and the flavoring was not derived from vanilla, and if the characterizing flavor of the food is vanilla, then the food must be identified as 'artificially flavored.'"

80.     Since vanillin is responsible for between one-quarter (25%) and one-third (33%) of the overall flavor and aroma impact of vanilla, it is false and misleading to describe the Product's taste as "vanilla," because it lacks detectable level of the odor-active compounds that are critical to the expected vanilla taste.

81.     The added vanillin skews the balance of flavor compounds, and the result is

dissimilar to what consumers expect from vanilla beans.

82.     Vanillin from non-vanilla sources is much cheaper than vanilla, which is an economic deception.

83.     Consumers are entitled to know "whether the product [they are buying] is flavored with a vanilla flavoring derived from vanilla beans, in whole or in part, or whether the food's vanilla flavor is provided by flavorings not derived from vanilla beans."[5]

84.     Maltol is another artificial flavor used in the Product.

85.     Though maltol is sometimes detected in vanilla at levels between 0.004 and 0.01 PPM, its presence in the Product at 8.0879 PPM means it was added to the Product as a component of the "Natural Flavor" when it actually is an artificial flavor – from artificial sources.

86.     Maltol increases the sweetness of a food, yet vanilla's sweetness is appreciated on its own and added sweetness detracts from the vanilla taste desired by consumers.

87.     Though maltol can be a "natural flavor," it is economically prohibitive to use the naturally derived version due to its price.

88.     If the naturally derived version of maltol were used, it would be present in an amount several times greater than it is, because the artificial version is much more potent.

89.     Piperonal (heliotropine) (0.0535 PPM) is another artificial flavor in the Product, which contributes a powdery flavor not associated with vanilla.

90.     Piperonal can be obtained naturally, but the natural version is cost-prohibitive, which reduces its use.

91.     Had "natural" piperonal been used, its concentration in the Product would exceed 20 PPM, since this is the typical usage level for the natural version.

---

[5] Hallagan article.

Class Action Complaint

92.     The presence of added vanillin, artificial maltol and artificial piperonal renders the front label representation of "Vanilla" false, deceptive and misleading because it is required to state "artificially flavored." 21 C.F.R. § 101.22(i)(2).

93.     Because Defendant's ingredient list designates "Organic Natural Flavors" and "Natural Flavor," it gives consumers the impression these are natural vanilla flavors, which is misleading because these contain artificial flavors.

94.     The correct labeling of these flavor ingredients should be "Natural and Artificial Flavors" or "Organic Natural Flavors, Artificial Flavors."

95.     Defendant's listing of "Organic Natural Flavors" and "Natural Flavor" makes it inconceivable for consumers without chromatography equipment at the checkout line to ascertain the Product contains high levels of vanillin (and maltol and piperonal) even though they were not required to scrutinize the ingredient list.

96.     In the alternative, Defendant's front label fails to disclose "with other natural flavors" ("WONF").

97.     Federal regulations require that where a food is flavored from a characterizing flavor *and* other natural flavors from sources other than the characterizing flavor, which enhance, resemble or simulate the characterizing flavor, the front label is required to state "With Other Natural Flavor." 21 C.F.R. § 101.22(i)(1)(iii).

98.     Defendant's front label only discloses "vanilla" when it is required to state "With Other Natural Flavor."

99.     Reasonable consumers will be misled to expect the Product contains flavoring mainly from vanilla beans, does not contain artificial flavors and has a taste like vanilla because the front label only declares "Vanilla."

100.    Defendant intended that Plaintiff and the proposed Class rely on those omissions and

affirmative misrepresentations.

101.    Plaintiff was unaware that the Product contained artificial flavors when she purchased them.

**The Product is not "Clean" as this term is Understood by Consumers**

102.    The back of the Product states "Our Commitment to Clean Nutrition."



103.    According to CR Research and Ingredion Europe, consumers understand the term "clean" to refer to products that are (1) free from additives and artificial ingredients, (2) have a short list of simple, recognizable ingredients and are (3) minimally processed using traditional techniques that are understood by consumers.[6]

104.    Nielsen describes "clean" claims as being understood by consumers to refer to foods that are free from artificial ingredients and other ingredients consumers find undesirable.

105.    Though the Product is touted as providing "Clean Nutrition," it contains numerous ingredients consumers do not associate with "clean" products, because they are artificial, highly processed and have negative health effects.

---

[6] https://dawnfoods.com/docs/default-source/consumer-trends/2018_cleanlabel__infographic.pdf?sfvrsn=ce8f859c_0

16

Class Action Complaint

**INGREDIENTS:** ORGANIC ALMONDMILK (FILTERED WATER, ORGANIC ALMONDS), ORGANIC PEA PROTEIN, ORGANIC NATURAL FLAVORS, CONTAINS 1% OR LESS OF THE FOLLOWING: TRICALCIUM PHOSPHATE, ORGANIC RICE BRAN EXTRACT, TRIPOTASSIUM CITRATE, GELLAN GUM, SEA SALT, ORGANIC LOCUST BEAN GUM, NATURAL FLAVOR, ERGOCALCIFEROL (VITAMIN D2)

106.    The product contains tricalcium phosphate, reported by the Environmental Working Group to have numerous harmful effects.

107.    For instance, studies have shown that added phosphates are associated with increased risk of cardiovascular disease, coronary artery disease and kidney disease.[7]

108.    Phosphates are an artificial ingredient manufactured through a fusion process.

109.    Their purpose is to prevent "off" flavors due to the presence of metal ions.

110.    Phosphate additives like those in the Product are inconsistent with the representation of "Clean Nutrition."[8]

111.    Potassium citrate is another artificial and synthetic ingredient.

112.    It is prepared by neutralizing citric acid with potassium hydroxide or potassium

---

[7] Ritz, E., Hahn, K., Ketteler, M., Kuhlmann, M. K., & Mann, J. (2012). Phosphate additives in food—a health risk. *Deutsches Ärzteblatt International*, *109*(4), 49.

[8] http://www.stmichaelshospital.com/pdf/programs/hemodialysis/hidden-phosphorus-in-your-diet.pdf

17

carbonate.

113.   The citric acid used to make potassium citrate is manufactured from synthetic ingredients in a process that is not natural.

114.   Therefore, potassium citrate is an artificial ingredient and synthetic substance.

115.   Gellan gum is artificially produced by fermenting sugar with specific strains of bacteria.

116.   These ingredients are inconsistent with a product identified as providing "Clean Nuttrition" as they are all artificial/synthetic with potential harmful health effects.

117.   The description of the Product as providing "Clean Nutrition" is especially misleading because the back of the Product contains a medical endorsement.



118.   Defendant's conduct violated California's consumer protection statutes, including the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, et seq.; and the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17500, et seq.

119.   Defendant was aware that consumers, like Plaintiff and the Class, prefer natural products to those that are artificially flavored.

120.   Defendant intended for Plaintiff and the Class to be deceived, and Plaintiff and the

18

Class actually were deceived by the unlawful labeling.

121.    Defendant deceived Plaintiff and the Class into purchasing the Products by unlawfully concealing that they are artificially flavored.

122.    Plaintiff and the Class lost money as a result of Defendant's conduct because they would not have purchased the Product or would not have paid as much as they did in the absence of Defendant's misrepresentations and omissions.

123.    Plaintiff, as a reasonable consumer, is not required to subject consumer food products to laboratory analysis, to scrutinize the labels on the back of products to discover that a front label is false and misleading, or to search the labels for information that federal regulations require be displayed prominently on the front – and, in fact, under state law is entitled to rely on statements that Defendant deliberately places on the Products' labeling.

124.    Defendant, but not Plaintiff, knew or should have known that the Products' labeling was in violation of federal regulations and state law.

125.    Because Plaintiff reasonably assumed the Products were free of artificial flavoring based on the Products' labels when they were not, Plaintiff did not receive the benefit of her purchases.

126.    Instead of receiving the benefit of a product free of artificial flavoring and flavored mainly by vanilla, Plaintiff received a Product that was unlawfully labeled to deceive consumers into believing that it was naturally vanilla flavored and contained no artificial flavoring, in violation of federal and state labeling regulations.

127.    Defendant knows consumers will pay more for the Product because the front label only states "vanilla" and not "artificially flavored" and "does not taste like real vanilla."

128.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

Class Action Complaint

129.     The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

130.     Had plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it.

131.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less $3.98 for boxes of cartons of 32 OZ, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if represented in a non-misleading way.

**Reliance and Economic Injury**

132.     When purchasing the Product, Plaintiff sought a product with a materially greater amount of vanilla than it actually contained.

133.     When purchasing the Product, Plaintiff sought a product that was natural in that its vanilla flavor was provided exclusively by vanilla beans.

134.     Plaintiff read and relied on Defendant's false and misleading product name, statements, statement of identity and misleading claims in its labeling and advertising of the product.

135.     Plaintiff also saw and relied on statements on the Product, which misleadingly reference only "vanilla" even though much, if not all, of the vanilla flavoring comes from non-vanilla sources.

136.     Plaintiff purchased the Product, and paid more for it than she would have paid believing the product had qualities she sought (e.g., only vanilla flavor from vanilla beans from the vanilla plant) based on the misleading labeling and marketing; but the product was unsatisfactory to her because those representations were false and misleading.

137.     The Product costs significantly more per ounce compared to other similar products which lack prominent and unqualified front label claims of "Vanilla."

Class Action Complaint

138.    Plaintiff paid more for the Product than she would have had she not been misled by the false and misleading labeling and advertising complained of herein.

139.    For these reasons, the Product was worth less than what plaintiff paid for them.

140.    Plaintiff lost money as a result of Defendant's deception in that Plaintiff did not receive what she paid for.

141.    Plaintiff altered her position to her detriment and suffered damages in an amount equal to the amount she paid for the Product.

142.    By engaging in its misleading and deceptive marketing, sales and pricing scheme, Defendant reaped and continues to reap increased sales and profits.

## CLASS ACTION ALLEGATIONS

143.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

144.    The class that Plaintiff seeks to represent (the "Class") is composed of and defined as follows:

> All persons residing in California and Oregon who have purchased the Product for their own use (which includes feeding their families), and not for resale, since December 3, 2014.

145.    Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

146.    For the purposes of this Complaint, the term "Class Members" refers to all members of the Class, including the Plaintiff.

147.    This action is maintainable as a class action under Federal Rules of Civil Procedure Rule 23(a), and (b)(2) and (b)(3).

21

148.     Numerosity.   The Class consists of thousands of persons throughout the States of California and Oregon.  The Class is so numerous that joinder of all members is impracticable, and the disposition of their claims in a class action will benefit the parties and the Court.

149.     Commonality and Predominance.  The questions of law and fact common to the Class has the capacity to generate common answers that will drive resolution of this action.   They predominate over any questions affecting only individual class members.  Common questions of law and fact include, but are not limited to, the following:

      i.     Whether Defendant contributed to, committed, or is responsible for the conduct alleged herein;

     ii.     Whether Defendant's conduct constitutes the violations of law alleged herein;

    iii.     Whether Defendant acted willfully, recklessly, negligently, or with gross negligence in the violations of laws alleged herein;

    iv.     Whether Class Members are entitled to injunctive relief; and

     v.     Whether Class Members are entitled to restitution and damages.

150.     By seeing the name, labeling, display and marketing of the Product, and by purchasing the Product, all Class Members were subject to the same wrongful conduct.

151.     Absent Defendant's material deceptions, misstatements and omissions, Plaintiff and other Class Members would not have purchased the Product.

152.     Typicality.   Plaintiff's claims are typical of the claims of the Class, respectively, because she purchased the Product and was injured thereby.  The claims of Plaintiff and other Class Members are based on the same legal theories and arise from the same false, misleading and unlawful conduct.

153.     Adequacy.  Plaintiff is an adequate representative of the Class because her interests do not conflict with those of other Class Members.  Each Class Member is entitled to damages

reflecting a similar and discrete purchase or purchases that each Class Member made.  Plaintiff has retained competent and experienced class action counsel, who intends to prosecute this action vigorously.  The Class Members' interests will be fairly and adequately protected by Plaintiff and her counsel.

154.    Superiority.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all Class Members is impracticable. The amount at stake for each consumer, while significant, is such that individual litigation would be inefficient and cost-prohibitive.  Plaintiff anticipates no difficulty in the management of this action as a class action.

155.    This Court should certify a class under Rule 23(b)(2) and (b)(3) because Defendant has acted or refused to act on grounds that apply generally to the Class, by making illegal, unfair, misleading and deceptive representations and omissions regarding the Product.

156.    Notice to the Class.  Plaintiff anticipates that this Court can direct notice to the Class, to be effectuated by publication in major media outlets and the Internet.

## CLAIMS FOR RELIEF

### FIRST CLAIM
**(Violation of California Business & Professions Code §§ 17200 *et seq.* –
Unlawful Conduct Prong of the "UCL")
(ON BEHALF OF PLAINTFF AND THE CALIFORNIA CLASS)**

157.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein. California Business & Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

158.    The acts, omissions, misrepresentations, practices, and non-disclosures of Whole Foods, as alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including, at least, the following sections:

23

    i.    21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

    ii.    21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

    iii.    21 C.F.R. § 101.18(b), which prohibits true statements about ingredients that are misleading in light of the presence of other ingredients;

    iv.    21 C.F.R. § 101.22, Foods; labeling of spices, flavorings, colorings and chemical preservatives.;

159.    Defendant's conduct is further "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA"), as discussed in the claims below.

160.    Defendant's conduct also violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including, at least, the following sections:

    i.    Section 110100 (adopting all FDA regulations as state regulations);

    ii.    Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account. The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

    iii.    Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

    iv.    Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

    v.    Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

    vi.    Section 110400 ("It is unlawful for any person to receive in commerce any food

24

… that is falsely advertised or to deliver or proffer for delivery any such food…."); and

vii.    Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

161.    Each of the challenged statements made and actions taken by Whole Foods violates the FFDCA, the CLRA, the FAL, and the Sherman Law, and therefore violates the "unlawful" prong of the UCL.

162.    Defendant leveraged its deception to induce Plaintiff and members of the Class to purchase products that were of lesser value and quality than advertised. Defendant's deceptive advertising caused Plaintiff and members of the Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase the Product over other products that are less expensive, and contain virtually the same or immaterially different amounts of vanilla.

163.    Had Plaintiff and the members of the Class been aware of Defendant's false and misleading advertising tactics, they would not have purchased the Product at all or would have paid less than what they did for it.

164.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

165.    Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

Class Action Complaint

**SECOND CLAIM**
**(Violation of California Business & Professions Code §§ 17200, *et seq*. –**
**Unfair and Fraudulent Conduct Prong of the "UCL")**
**(ON BEHALF OF PLAINTFF AND THE CALIFORNIA CLASS)**

166.    Plaintiff incorporates by reference all of the allegations of the preceding paragraphs as if fully set forth herein.

167.    California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

168.    The false and misleading labeling of the Product, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral, unscrupulous, and offends public policy.  Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

169.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices, because Defendant's conduct is false and misleading to Plaintiff and members of the Class.

170.    Defendant's labeling and marketing of the Product is likely to deceive Class Members about the flavoring source and amount of vanilla in the Product.

171.    Defendant either knew or reasonably should have known that the claims and statements on the labels of the Product were likely to deceive consumers.

172.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

173.    Plaintiff also seeks an order for the disgorgement and restitution of all monies from the sale of the Product that were unjustly acquired through acts of unlawful, unfair and/or fraudulent competition.

Class Action Complaint

**THIRD CLAIM**
**(Violation of California Business & Professions Code §§ 17500, *et seq.* –**
**False and Misleading Advertising ("FAL"))**
**(ON BEHALF OF PLAINTIFF AND THE CALIFORNIA CLASS)**

174.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

175.    California False Advertising Law (Cal. Business & Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

176.    As alleged herein, Defendant, in its labeling of the Product, makes "false [and] misleading advertising claim[s]," as it deceives consumers as to the flavor composition and amount of vanilla in the Product.

177.    In reliance on these false and misleading advertising claims, Plaintiff and members of the Class purchased and used the Product without the knowledge that the Product did not get its vanilla taste from vanilla beans.

178.    Defendant knew or should have known that its labeling and marketing was likely to deceive consumers.

179.    As a result, Plaintiff and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**FOURTH CLAIM**
**Violation of California's Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750 *et seq.* ("CLRA")**
**(ON BEHALF OF PLAINTIFF AND THE CALIFORNIA CLASS)**

180.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

181.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

Class Action Complaint

182.   Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Product for personal, family, or household purposes by Plaintiff and Class Members, and violated and continues to violate the following sections of the CLRA:

1. § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

2. § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

3. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

4. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

183.   Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

184.   Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

185.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will provide a letter to Defendant concurrently with the filing of this Complaint or shortly thereafter with notice of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. If Defendant does not thereafter correct its business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

186.   Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, her reasonable attorney fees and costs, and any other relief that the Court deems proper.

Class Action Complaint

**FIFTH CLAIM**
**Breach of Express Warranties**
**Cal. Com. Code § 2313(1)**
**(ON BEHALF OF PLAINTIFF AND THE CALIFORNIA AND OREGON CLASS)**

187.   Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

188.   The Product was manufactured, labeled and sold by Defendant or at its express directions and instructions, and warranted to Plaintiff and proposed Class Members that it possessed substantive, quality, compositional and/or environmental which it did not.

189.   Through the Product's labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Product in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

190.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

191.   Defendant breached the express warranties by selling a Product that does not and cannot provide the promised benefits and moreover by selling a Product that is misrepresented because not only does it contain undisclosed artificial vanilla flavors, but it contains less vanilla than what consumers expect, including a taste dissimilar to vanilla.

192.    Plaintiff and the Class Members would not have purchased the Product had they known the true nature of the Product's ingredients and that the Product contains non-vanilla flavors and vanilla enhancers rather than real vanilla.

193.    That breach actually and proximately caused injury in the form of the lost purchase price that Plaintiff and Class members paid for the Product.

194.    Concurrently with the filing of this Complaint, Plaintiff Brown mailed a notice letter

to Orgain Management, Inc. The letter was sent on behalf of Plaintiff and all other persons similarly situated.

195.     As a result of Defendant's breach of warranty, Plaintiff and Class Members have been damaged in the amount of the purchase price of the Product and any consequential damages resulting from the purchases.

196.     Plaintiff and proposed Class Members would not have purchased the Product or paid as much as they did if the true facts had been known, suffering damages.

**SIXTH CLAIM**
**Breach of Implied Warranty of Merchantability**
**Cal. Com. Code § 2314**
**(ON BEHALF OF PLAINTIFF AND THE CALIFORNIA AND OREGON CLASS)**

197.     Plaintiff incorporates by reference all allegations contained in the complaint incorporates by reference all allegations contained in the complaint as if fully set forth herein.

198.     Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Product, made representations to Plaintiff and the Class that, among other things, has a primary characterizing flavor of "Vanilla" that comes from vanilla beans, from the vanilla plant and tastes like vanilla.

199.     Plaintiff and the Class bought the Product manufactured, advertised, and sold by Defendant, as described herein.

200.     Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other consumers, an implied warranty that those goods were merchantable.

201.     However, Defendant breached that implied warranty in that the Product does not provide the benefits represented by Defendant, as set forth in detail herein, and in reality, contains non-vanilla flavors and vanilla enhancers rather than real vanilla.

202.     Concurrently with the filing of this Complaint, Plaintiff Brown mailed a notice letter

Class Action Complaint

to Defendant Orgain Management, Inc. The letter was sent on behalf of Plaintiff and all other persons similarly situated.

203.    As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods nor are they fit for their ordinary purpose of providing the benefits as promised.

204.    Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Product's purchase price.

## SEVENTH CLAIM
### Fraud
### (ON BEHALF OF PLAINTIFF AND THE CALIFORNIA AND OREGON CLASS)

205.    Plaintiff incorporates by reference all allegations contained in the complaint incorporates by reference all allegations contained in the complaint as if fully set forth herein.

206.    As alleged herein, Defendant knowingly made material misrepresentations and omissions regarding the Product on the Product's labeling and packaging in the Product's advertisements, and/or on its website.

207.    Defendant made these material misrepresentations and omissions in order to induce Plaintiff and putative Class Members to purchase the Product. Specifically, the amount and proportion of the characterizing component, vanilla, has a material bearing on price and consumer acceptance of the Product. Therefore, consumers do not expect non-vanilla flavors where/when a product's characterizing flavor is blatantly labeled "vanilla."

208.    Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on front label and/or the ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

209.    Rather than inform consumers that the Product contained artificial vanilla flavors and

Class Action Complaint

vanilla enhancers , and that the vanilla flavor was not from vanilla beans or vanilla plant sources, Defendant claims in marketing materials and its marketing campaign for the Product that the Product does in fact get its flavoring only from vanilla beans in order to mislead consumers that the Product has a "Natural flavor".

210.    Plaintiff and proposed Class Members would not have purchased the Product or paid as much as they did if the true facts had been known, suffering damages.

211.    Defendant knew that the Product contained non-vanilla artificial flavors and vanilla enhancers (i.e., maltol, vanillin, ethyl vanillin) and did not provide a predominating real vanilla flavor, but nevertheless made such representations through the marketing, advertising and on the Product's labeling. In reliance on these and other similar misrepresentations, Plaintiff and putative Class Members were induced to, and did, pay monies to purchase the Product.

212.    Had Plaintiff and the Class known the truth about the Product, they would not have purchased the Product.

213.    As a proximate result of the fraudulent conduct of Defendant, Plaintiff and the putative Class paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

**EIGHTH CLAIM**
**Unjust Enrichment**
**(ON BEHALF OF PLAINTIFF AND THE CALIFORNIA AND OREGON CLASS)**

214.    Plaintiff incorporates by reference all allegations contained in the complaint as if fully set forth herein.

215.    Plaintiff and putative Class Members conferred a benefit on Defendant when they purchased the Product. By its wrongful acts and omissions described herein, including misrepresenting the amount and proportion of the characterizing component, vanilla, in the Product, and selling the misrepresented Product that did not otherwise perform as represented and for the

Class Action Complaint

particular purpose for which it was intended, Defendant was unjustly enriched at the expense of Plaintiff and putative Class Members.

216.    Plaintiff's detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

217.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and putative Class Members under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the misrepresented Product.

218.    Defendant has been unjustly enriched in retaining the revenues derived from Class Members' purchases of the Product, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured, sold, misrepresented the nature of the Product, misrepresented its ingredients, and knowingly marketed and promoted a Product with a false, misleading, and deceptive Product label, which caused injuries to Plaintiff and the putative Class Members because they would not have purchased the Product based on the same representations if the true facts concerning the Product had been known.

219.    Plaintiff and putative Class Members have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Product on the same terms or for the same price had they known the true nature of the Product and the mis-statements regarding what the Product was and what it contained.

220.    Defendant either knew or should have known that payments rendered by Plaintiff and putative Class Members were given and received with the expectation that the Product actually contained vanilla as represented by Defendant in advertising and on the Product's labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these

circumstances.

221.    Plaintiff and putative Class Members are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

222.    When required, Plaintiff and putative Class Members are in privity with Defendant because Defendant's sale of the Product was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendant's agents for the purpose of the sale of the Product.

223.    As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiff and putative Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and other members of the proposed Class herein, prays for judgment and relief on all of the legal claims as follows:

A.    Certification of the Class, certifying Plaintiff as representative of the Class, and appointing Plaintiff's counsel for the Class;

B.    A declaration that Defendant has committed the violations alleged herein;

C.    For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and Cal Civ. Code § 1780; except for no monetary damages under the CLRA;

D.    For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*;

E.    For damages, declaratory and injunctive relief pursuant to California Civil Code § 1780; except for no monetary damages under the CLRA;

F.    An award of compensatory damages, the amount of which is to be determined at trial, except for no monetary damages under the CLRA;

34

G.      For punitive damages;

H.      For interest at the legal rate on the foregoing sums;

I.      For attorneys' fees;

J.      For an Order directing that Defendant bear the costs of any notice sent to the Class;

K.      For costs of suit incurred; and

L.      For such further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Plaintiff demands a jury trial on all causes of action so triable.

35

Class Action Complaint

Dated:  January 4, 2021

Respectfully submitted,


**SHUB LAW FIRM LLC**

*/s/ Jonathan Shub*
Jonathan Shub (State Bar No. 237708)
*jshub@shublawyers.com*

Kevin Laukaitis (Pro Hac Vice to file)
*klaukaitis@shublawyers.com*
134 Kings Highway E Fl 2
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile: (856) 210-9088

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (Pro Hac Vice to file)
spencer@spencersheehan.com
60 Cuttermill Rd Ste 409
Great Neck, NY 11021
Telephone:  (516) 268-7080
Facsimile:   (516) 234-7800

**GREG COLEMAN LAW PC**
Alex Straus (State Bar No. 321366)
*alex@gregcolemanlaw.com*
16748 McCormick Street
Los Angeles, CA 91436
Telephone: (310) 450-9689
Facsimile: (310) 496-3176

*Counsel for Plaintiff and the Proposed Class*

Class Action Complaint

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Jonathan Shub, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an attorney at Shub Law Firm LLC, counsel of record for Plaintiff in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California. I declare under the penalty of perjury under the laws of the State of New Jersey and/or California and the United States that the foregoing is true and correct and that this declaration was executed in Haddonfield, New Jersey this 4th day of January, 2021.


*/s/ Jonathan Shub*
Jonathan Shub

Class Action Complaint